399 A.2d 1251.

VIOLA C. McLEE *vs.* EDWARD J. McLEE.

APRIL 17, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   Viola and Edward McLee are husband and wife. They were married to each other on September 28, 1940. Today they are the parents of six children, the youngest of whom is a minor. Back in April of 1975 Viola filed a petition in the Family Court in which she sought relief with-

out the commencement of divorce proceedings and a motion asking for temporary allowance for the support of herself and the minor child.

On May 9, 1974, a consent decree was entered directing Edward to pay Viola a weekly support payment of $90. The decree also stipulated that Edward would be responsible for certain facets of the minor's maintenance, including tuition, clothing, medical bills, and the cost of providing Blue Cross and Blue Shield services. The decree also provided that the wife was to have custody of the minor and the husband was to have reasonable rights of visitation. Viola was awarded exclusive use of the marital domicile. The record indicates that the couple owned a single-family residence in Johnston and two multifamily dwellings in Providence. Edward was allowed to collect and keep the income from the rental properties.

In the ensuing years the couple filed a variety of petitions and motions in the Family Court. Some of those filed by Edward sought a partition of the couple's real estate or a reduction of the support payment, while others filed by Viola requested the court to hold her husband in contempt for failure to comply with the support-payment portions of the 1975 decree.

The motion which is central to this appeal was filed on July 11, 1977. In it, Edward alleged that Viola had refused to let him see the minor child and also informed him that she and the child would soon be on their way to California. Consequently, Edward asked that Viola be enjoined from removing the minor from the jurisdiction, or in the alternative he asked that if the minor refused to see him, all payments for support of said child be suspended.

When Edward's motion came on to be heard during the late afternoon of July 18, Viola was not present. Her counsel told the court that he was prepared to proceed on the latest of the wife's many contempt motions by proving the contempt through the husband's testimony. Edward spoke up and told

the trial justice that he had visited the marital domicile earlier in the day and it appeared to be empty. At that point the trial justice said he was satisfied that Viola was no longer in the state and remarked: "Therefore the [c]ourt will suspend the order of $90.00 a week and any other orders concerning the payment of any bills on behalf of the petitioner and on the minor child." Later, on August 2, an order was entered relieving Edward of the responsibility of continuing to make the support payments.

Viola is now before us on a single-issue appeal. The issue she presents is whether the trial justice could terminate the support payments without hearing any testimony concerning the child's needs and welfare. The answer is, "No."

Recently, in *Benum* v. *Benum*, 116 R.I. 641, 360 A.2d 108 (1976), we were concerned with a father's right to terminate child-support payments when the child refused to associate with her father. There, we recognized that suspension of support payments was a matter addressed to the trial justice's sound discretion. Suspension, we said, was possible provided that the trial justice evaluated the effect of the suspension in the light of the child's needs and welfare. Admittedly, in *Benum* the child frustrated the father's visitation rights, and here it is the mother's move to California which is the catalytic agent. However, our concern in *Benum* for the child's welfare is equally applicable here, and a review of the past pronouncements of this court in controversies concerning a mother's interstate movements with her child and its effect on the father's visitation rights will demonstrate why this is so.

In *Leighton* v. *Leighton*, 48 R.I. 195, 136 A. 443 (1927), a husband's challenge to a denial of the suspension of alimony payments floundered on a procedural point. His challenge came from the trial court by way of a bill of exceptions at a time when appellate review of the denial of a motion to modify a final decree was gained through an appeal. The husband was seeking a suspension because his former spouse had moved to Massachusetts, taking with her the parties'

three children. The court, after pointing out the procedural deficiency, gratuitously referred to the importance of the children's welfare and pointed out that while visitation rights have some significance, the non-custodial parent does not have the right to dictate the place of the residence of the custodial parent.

Later, in *Lawrence* v. *Lawrence*, 85 R.I. 13, 125 A.2d 218 (1956), a final divorce decree allowed the mother to take the children to the State of New York, where they were to make their home. The father was given visitation rights. The father sought a suspension of support payments because the mother, after remarrying, moved to Ohio, taking the children with her. Upon the father's appeal from the denial of the suspension petition, this court equated such a petition with a motion for a change in custody and reiterated that the "chief consideration" in either situation was the best interest of the children.

Again, in *Chatelain* v. *Chatelain*, 93 R.I. 136, 172 A.2d 332 (1961), a father sought to amend a final decree so that he would be awarded custody of the children because the mother had told him that she was taking the children with her to Switzerland, where they would live for 2 years with the maternal grandparents. The mother also sought judicial approval of the move and a temporary suspension of the father's visitation rights. The trial justice granted the mother's petition and denied the father's. In rejecting the father's appeal, this court emphasized that in resolving such disputes, the children's welfare should be the "paramount consideration" guiding the trial court in the exercise of its discretion.

In a comparable situation to the case at bar, Mr. Justice Hennessey, now Chief Justice, wrote that in resolving this type of dispute the court should neither discipline the wife for her alleged shortcomings, nor reward the husband for any wrongs which he may have suffered. The court's "primary interest," he stressed, should be what is best for the children. *Ruquist* v. *Ruquist*, 367 Mass. 662, 666-67, 327 N.E.2d 742, 744 (1975). In Rhode Island, matters concerning divorce,

custody, visitation, and child support are determined in a judicial forum called the Family Court. On July 18, 1977, the McLee family consisted of a wife, a husband, and a 15-year-old son. The trial justice apparently punished the wife, obviously rewarded the husband, and somehow overlooked the needs of the son. The suspension order cannot stand.

The wife's appeal is sustained, the order appealed from is vacated, and the cause is remanded to the Family Court.

*Kirshenbaum & Kirshenbaum, Alfred Factor,* for petitioner.

*Friedman & Kessler, Harold I. Kessler,* for respondent.